·(79 Misc. Rep. 586.)

## In re DALY'S ESTATE.

(Surrogate's Court, New York County. February, 1913.)

TAXATION (§ 876*)—TRANSFER TAX EXEMPTIONS—"EDUCATIONAL, CHARITABLE, OR BENEVOLENT CORPORATION."

    The American Society for the Prevention of Cruelty to Animals is not an "educational, charitable, or benevolent corporation" within the Transfer Tax Act (Consol. Laws 1909, c. 60) § 221, in force at the time of decedent's death in 1911, exempting such societies from the provisions of the act.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. § 876.*

    For other definitions, see Words and Phrases, vol. 3, p. 2317.]

In the matter of the appraisal under the Transfer Tax Act of the .estate of Catherine E. Daly. From an order assessing the same, the State Comptroller appeals. Reversed and report remitted.

Thomas E. Rush, of New York City, for State Comptroller.

J. Mayhew Wainwright, of New York City, for American Society for the Prevention of Cruelty to. Animals.

―――――――――

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

COHALAN, S. The State Comptroller appeals from the order assessing a tax upon the decedent's estate and alleges that the appraiser erred in exempting from taxation a bequest of money to the American Society for the Prevention of Cruelty to Animals. Decedent died on the 17th of April, 1911. The Tax Law in force at that time provided that a bequest to an educational, charitable, or benevolent corporation was exempt from the provisions of the act. It also provided that a bequest of personal property other than money or securities to a society organized "for the enforcement of laws relating to children or animals" was exempt from taxation. The State Comptroller contends that the American Society for the Prevention of Cruelty to Animals is a corporation organized exclusively for the purpose indicated by its title, while the learned counsel for the society contends that it is an educational, charitable, and benevolent corporation. The act of incorporation of the society, as well as the by-laws passed pursuant thereto, shows that the society was formed to "enforce all laws which are now or may hereafter be enacted for the protection of dumb animals, and to secure by lawful means the arrest, conviction and punishment of all persons violating such laws; to provide effective means for the prevention of cruelty to animals throughout the United States, and to instruct the people to be kind to animals by the dissemination of humane literature and other effective methods." Its so-called educational work seems to be confined to the enforcement of laws enacted for the prevention of cruelty to animals, and to the publication of leaflets and tracts that appeal to mankind for humane treatment of animals. The enforcement of special laws can be considered educational only in the limited sense in which every experience of the individual may, by increasing his knowledge, be educational. It is not educational in the usual meaning of the word. There was no proof before the appraiser of the extent to which leaflets and tracts are disseminated, or whether such leaflets contain any matter of instruction other than an exhortation to refrain from cruelty to animals. It would therefore appear that the work which the society accomplishes cannot be designated as educational within the meaning of the term in section 221 of the Tax Law.

The learned counsel for the society also contends that the society is a benevolent and charitable corporation. Under the act of incorporation it is entitled to receive one-half of all the fines imposed upon persons convicted of violating the provisions of law relating to the prevention of cruelty to animals. The papers before the court do not show what amount is realized by the society from this source, or whether it is sufficient to meet all the necessary expenses of the society. But, assuming that the amount received from fines is inconsiderable in comparison with the amount expended by the society, and that the voluntary contributions of the humane and the philanthropic constitute its principal source of income, I am still unable to perceive how the society can properly be designated as benevolent or charitable. It is an elementary rule of statutory construction that the words of a statute are to be given their usual, ordinary meaning. McCluskey v. Cromwell, 11 N. Y. 593; Matter of O'Neil, 91 N. Y. 516. The usual acceptation of the words "benevolent" and "charitable" is limited to

those disinterested actions by which human beings confer benefits upon other members of the human family. It does not extend to the considerate and thoughtful treatment of animals by man. The latter may result from a benevolent spirit or charitable disposition, but the word which is ordinarily used to describe the considerate or thoughtful treatment of animals is not benevolent or charitable, but humane. While fully appreciating the valuable services which the society renders and the admirable work which it performs, I am constrained to hold that it is not an educational, charitable, or benevolent corporation within the meaning of those terms in section 221 of the transfer tax statute. The remedy for the statutory discrimination against corporations similar to the Society for the Prevention of Cruelty to Animals lies with the Legislature and not with courts. In Matter of Moses, 138 App. Div. 525, 123 N. Y. Supp. 443, the court held that the Brooklyn Society for the Prevention of Cruelty to Children was not entitled to exemption from taxation on a bequest of money or securities. This decision I consider controlling upon the matter under consideration. The order fixing tax will be reversed, and the appraiser's report remitted to him for the purpose of including in the taxable assets of decedent's estate the bequest to the American Society for the Prevention of Cruelty to Animals.

Order reversed, and appraiser's report remitted.