# CITY OF KNOXVILLE *v.* FT. SANDERS HOSPITAL.*

## (*Knoxville.*   September Term, 1923.)

1. **TAXATION.**   Property of hospital held not exempt as belonging to ''Charitable, scientific, or educational institution.''

   Where hospital with research laboratory and X-ray outfit was erected and maintained by certain physicians as a place to treat their patients and to perform their operations and to conduct a school for training nurses, and the big majority of patients were charged very substantial prices for their accommodation, the property *held* not exempt from taxation under Constitution, article 2, section 28, and Arts 1907, chapter 602, exempting properly belonging to "charitable, scientific, or educational institutions. (*Post, pp.* 703, 704.)

   Acts cited and construed:   Acts 1907, ch. 602;   Acts 1919, ch. 358.

   Cases cited and approved:   Cumberland Lodge v. Nashville, 127 Tenn., 248;   Ward Seminary v. Mayor and City Council, 129 Tenn., 412;   Chamber of Commerce v. City of Memphis, 144 Tenn., 291;   Nashville Labor Temple v. City of Nashville, 146 Tenn., 429.

   Constitution cited and construed:   Sec. 28, Art. 2.

2. **STATUTES.**   Provision for collection of taxes held embraced within title of amendatory act.

   Private Acts 1919, chapter 358, the title of which states it is an act to amend an act (Acts 1907, chapter 207) incorporating the city of Knoxville, etc., *held* valid as against contention that provision in body of act for collection of taxes was not covered by the title.   (*Post, p.* 705.)

   Acts cited and construed:   Acts 1907, ch. 207;   Acts 1919, ch. 358.

3. **TAXATION.**   Statute providing for assessment of all property except that of public utility corporations by tax assessor held not arbitrary or lacking in uniformity.

---

*On question of exemption of property used exclusively for private school, see notes in 21 L. R. A. (N. S.) 164 and L. R. A. 1917E, 1097.

Private Acts 1919, chapter 358, providing for the assessment by the tax assessor of all property except that of public utility cor-. porations, *held* not unconstitutional as preventing uniformity and equality, and making arbitrary distinction. (*Post, pp.* 705-707.)

Case cited and approved: Franklin County v. Railroad, 80 Tenn., 521.

Case cited and distinguished: City of Chattanooga v. Railroad Co., 75 Tenn., 561.

Constitution cited and construed: Sec. 28, art. 2.

4. MUNICIPAL CORPORATIONS. City tax assessor required to make assessment in accordance with principles established in regard to state taxation.

Private Acts 1919, chapter 358, providing for assessment by city tax assessor of property other than that of public utility corporations, does not permit assessment of property at other than its actual cash value in accordance with the General Assessment Act, Acts 1907, chapter 602, and acts 1919, chapter 3, regulating the assessment of public utility corporations, in view of constitution, article 2, section 29, providing that municipal assessments shall be made "upon the principles established in regard to state taxation." (*Post, p.* 707.)

Acts cited and construed: Acts 1907, ch. 602; Acts 1919, ch. 3.

5. TAXATION. Statute fixing different assessment date for assessment by city tax assessor held valid.

Private Acts 1919, chapter 358, providing for the assessment of property other than that owned by public utility corporations by city tax assessor, *held* not void by reason of provision fixing a different time of the year as assessment date. (*Post, p.* 708.)

Case cited and approved: Reeves v. City of Nashville, decided Dec. 22, 1923 (not for publication).

FROM KNOX.

City of Knoxville v. Ft. Sanders Hospital.

Appeal from the Chancery Court of Knox County.—HON. CHAS. HAYS BROWN, Chancellor.

POWERS & THORNBURGH, for City of Knoxville.

SMITH, WORD & ANDERSON, for Hospital.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The bill in this case was filed by the city of Knoxville to recover taxes for the year 1920 assessed against defendant, Ft: Sanders Hospital, together with interest and penalties. The defendant answered and denied that its property was subject to taxation, and also denied that the act under which the assessment was made was a valid law. The chancellor dismissed the bill, and the city has appealed to this court.

The defendant is a corporation organized under the laws of Tennessee for the purpose of operating a hospital and in connection therewith conducting a transfer and omnibus business. It is a corporation for profit, but insists that its property is exempt from taxation.

The defendant corporation was bought out by several doctors in Knoxville, they owning practically all its stock. It has a large hospital building in a desirable section of the city of Knoxville, in which there are sixty-five beds. In connection with its hospital it has a research laboratory and a modern X-ray outfit, and conducts a school for training nurses. About twenty student nurses are in the hospital and are there given instructions by the hospital staff. These young women are also employed at the hospital and

given their board and a small amount of money for their services.  Any doctor in Knoxville may bring a patient to the hospital for treatment, and any patient may come there for treatment.  No operations, however, are performed at the hospital except such as are performed by members of the hospital staff.

There are an average of seven or eight charity patients at the hospital.  The remainder of the patients there are charged very substantial prices for their accommodation.

Dr. L. L. Shedden, formerly president of the corporation, testifying with regard to the organization thereof, said it was organized because of the scarcity of hospital facilities in Knoxville; they being insufficient to take care of the sick and injured.  He said:

"We simply did not have facilities to do our work nor places to take care of the sick and injured, nor sufficient nurses to meet the demands, and we built and equipped one to assist in relieving the situation."

He said it was not a money-making proposition.  He was asked if it was not a fact that competent and skilled physicians and surgeons could practice their profession with more satisfaction through the use of a well-equipped hospital, and replied: "Yes, sir; that is the reason hospitals are built."  He was then asked further about the reasons for building and equipping the hospital, "And your purpose in doing that was to be more useful and more successful as practitioners of medicine?" and answered: "Yes, sir; and to get better facilities for taking care of the sick and the injured, and to give better treatment and attention in every way that can be done, and to be able to properly train young girls to become graduate nurses, and thereby supply a part of that great demand."

Following the permission of section 28 of article 2 of the Constitution, the legislature has for many years undertaken to grant certain exemptions from taxation. Among other things, in the last general assessment act there is exempted "all property belonging to any religious, charitable, scientific, or educational institutions when used exclusively for the purpose for which said institution was created, or is unimproved and yields no income." Chapter 602, Acts of 1907.

The question of the exemption of various. institutions under this statute has been considered in several recent cases. *Cumberland Lodge* v. *Nashville,* 127 Tenn., 248, 154 S: W., 1141; *Ward Seminary* v. *Mayor and City Council,* 129 Tenn., 412, 167 S. W., 113; *Chamber of Commerce* v. *City of Memphis,* 144 Tenn., 291, 232 S. W., 73; *Nashville Labor Temple* v. *City of Nashville,* 146 Tenn., 429, 243 S. W., 78, 23 A. L. R., 807.

It is not worth while to review these cases; they are familiar to the profession. The difficulty always is in the application of the rules announced therein.

While the case before us is not free from doubt, we are of opinion that it falls within *Chamber of .Commerce* v. *City of Memphis,* supra. Though the defendant does some charitable work, some educational work, and some scientific work, we do not think it can be regarded as a charitable institution, an educational institution, nor a scientific institution within the sense of the Constitution, nor is its property devoted exclusively to any of these purposes. The great bulk of its business is the operation of a hospital where patients pay for the services rendered them.. That portion of the property devoted to charitable, scientific,

and educational purposes is not separable from the remainder.

We held, in the case of *Ward Seminary* v. *Mayor and City Council,* that an educational institution did not lose its right to exemption because it was conducted for profit. Ward Seminary, however, was strictly an educational institution, or at least so much of its property as was held to be exempt was used exclusively for that purpose. The law exempts educational institutions by name. Hospitals are not exempt unless educational, charitable, or scientific.

It is obvious from the testimony of Dr. Shedden that this hospital was erected and is maintained as an aid or convenience for the physicians and surgeons who use it in the practice of their profession—as a place to treat their patients and perform their operations. Such a place is commonly found necessary or convenient by physicians and surgeons doing a large practice. Manifestly, the educational and charitable work done at this hospital is incidental, and we do not think it could be properly called a scientific institution. While doubtless these doctors pursue their calling in a scientific or skilled manner, still they do not pursue it so much in the interest of science as for their own livelihood.

The same argument which would make of this property a scientific institution would make of every pious family a religious institution and exempt its home from taxation.

The taxes sought to be collected herein were assessed under chapter 358 of the Private Acts of 1919, which act undertook to change the method of assessing taxes in the city of Knoxville, and provided for the creation of the office of city tax assessor, and defined his duties.

It is said that this act is unconstitutional because it is an amendment of a previous act and does not indicate its subject in its own caption, and is too broad to fall within the caption of the original act.   We think this criticism is not well made.

_ The title of chapter 358 of the Acts of 1919 is "An act to amend an act entitled 'An act to incorporate the city of Knoxville, in Knox county, Tennessee, and to define the rights, powers and liabilities of the same,' being chapter 207 of the Acts of 1907 of the General Assembly of the State of Tennessee, and all acts amendatory thereof."

Although there is nothing in the caption of the amendatory act to indicate its purpose, it will be noticed that the original act is entitled one to incorporate the city of Knoxville, "and to define the rights, powers and liabilities of the same."   Clearly a provision for the collection of taxes and the creation of the instrumentality for this purpose is embraced within an act defining the rights and powers of a municipal corporation.

Chapter 358 of the Private Acts of 1919 is said to be unconstitutional for the further reason that it devolves upon the city tax assessor the duty of assessing all property except the property of public utility corporations, which latter property is assessed by the Railroad Commission of Tennessee.   It is urged that this makes an arbitrary distinction between public utility corporations and other property owners, and that it furthermore violates the tax uniformity clause of the Constitution.   The argument is that the Railroad Commission will have one idea of values and the city tax assessor another idea of values, and that equality will not be possible. This conten-

.tion is strongly urged, but was rejected long since by this court.

In *City of Chattanooga* v. *Railroad Co.,* 75 Tenn. (7 Lea), 561, the court, speaking of the provision of section 28 of article 2 of the Constitution that "no one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value," said:

"This value, however, as is provided, is to be ascertained in such manner as the legislature may direct. That is, the mode of ascertainment or means or agencies to be adopted by the legislature for such ascertainment, is left to the discretion of that body. It may be by the justices of the civil district, as formerly, or by a county assessor, as provided by the act of 1875, or as required by the act of 1877, by assessors for each district of the county, and in cities divided into wards, by an assessor for each ward. . . . Any and all agencies serving the same purpose may be used or prescribed by the legislature for the purpose indicated. In these matters the legislature has the freedom of an unlimited discretion. . . .

"It is not meant, as a matter of course, that precise accuracy in valuation must be had—this is impossible; but what was intended is, that all shall be valued under the same principle, and the agencies employed shall certainly be guided and bound by the same rule in ascertaining the actual value."

The foregoing case was followed in *Franklin County* v. *Railroad,* 80 Tenn. (12 Lea), 521, and it was there held that the mode of ascertaining the value of particular kinds of property was a matter for the discretion of the legis-

City of Knoxville v. Ft. Sanders Hospital.

lature, and that body might adopt a method of assessment by assessors for the State at large for determining the value of the distributable properties of railroad companies.

The plan of having the properties of railroad companies and of other public service corporations assessed by the State board is too firmly established in Tennessee to be questioned. The State board has much better facilities for ascertaining the real value of such property, and assessments by it tend to the promotion of equality in valuation.

Another objection made to chapter 358 of the Private Acts of 1919 is that it leaves the method of procedure by the tax assessor to be determined by city ordinance. It is insisted that while public utility property must be assessed at its actual cash value that the city tax assessor, by authority of ordinance, can assess on some other basis.

We see nothing in the act that authorizes any such procedure by the city authorities or by the city tax assessor. Section 29 of article 2 of the Constitution provides that municipal assessments shall be made "upon the principles established in regard to State taxation."

The city of Knoxville and its assessor are as much obligated to assess all property at its actual cash value as though these words had been used in the act before us. Any ordinance to the contrary would be invalid, and the legislature never intended to authorize any such departure from the principles established in regard to assessment by the Constitution, and by chapter 3 of the Acts of 1919 regulating the assessment of the public utility corporations and by the general assessment act, chapter 602 of the Acts of 1907.

So far as the act authorizes the city to fix a different time of the year as an assessment date, this is not objectionable. We have recently so held in *Reeves* v. *City of Nashville,* decided December 22, 1923, at Nashville (not for publication).

Reversed and decree for complainant.