No. 11,910.

Hughes v. Pallas, et al.

Decided May 14, 1928.

Mr. Samuel H. Kinsley, Mr. Leon H. Snyder, for plaintiff in error.

Messrs. Strachan & Horn, Mr. L. Leslie Miles, for defendants in error.

*Department One.*

Mr. Justice Whitford delivered the opinion of the court.

This is an action in ejectment against Pallas, the lessee, after notice of forfeiture for the nonpayment of rent at the time designated in the lease, also for the use of the premises for purposes alleged to be inhibited by its express terms. Defendant Jones, as assignee of the lease, intervened. At the conclusion of the evidence the court directed a verdict for the defendant in error. The plaintiff in error comes here to review the judgment entered on the verdict.

Defendant in error, Pallas, leased the premises from Thomas Hughes, now deceased, the father of the plaintiff in error, for five years, at two hundred and fifty dollars per month rent, with the option of renewing the lease for the additional term of five years, on the payment of twenty-five dollars more rent per month. On the same day Pallas assigned the lease to defendant in error, Jones, with the consent of the lessor, and Jones, with the lessor's full knowledge, took immediate possession, and thereupon expended $15,000 for alterations and improvements in preparing the place for his business. Jones operated a restaurant and cigar store therein during the summer and tourist season, and closed the restaurant and store in the winter, or dull season of the year. Hughes, the lessor, regularly called for, and received the monthly rents at Jones' place of business, and this he continued to do up to the time of his death. Hughes died in October, 1925, leaving George Hughes, the plaintiff in

error, and a daughter, Alice, as his only heirs at law. Thereafter Alice died, leaving George the sole heir of the two estates. After the 'death of Thomas plaintiff in error was offered a much higher rent for the place occupied by Jones, and on March 29, 1926, mailed a notice to defendant Pallas that he expected strict compliance with the terms of the lease. Five days thereafter, on April 3rd, Hughes, the plaintiff in error, not having called for the rent, as was his usual custom, Jones caused a check to be sent to him, which Hughes refused to receive, and thereupon returned it to the maker. Hughes at first attempted to declare a forfeiture based upon the failure to pay the rent upon the first day of the month. Thereafter, before the suit was brought, and before the restaurant was reopened for the summer season, Jones allowed, without compensation, and as an act of charity, the Methodist church to use the restaurant room for one day, for a rummage sale, and for like purposes extended the same privilege to the Salvation Army, and to one other church, for one day each. These separate rummage sales occurred on April 10th, 17th, and 24th, 1926. It is for this use of the premises by these religious organizations, conducted for charitable purposes, on three different occasions, of one day each, that the plaintiff in error is now attempting to have the lease forfeited. In this court he has expressly abandoned all right to have the lease forfeited for failure to pay the rent on the due day fixed in the lease. In this state of the record, the only question for our determination is, whether or not the plaintiff in error is entitled to a forfeiture under the terms of the lease, because the lessee permitted the premises to be used by the three church organizations, for charitable purposes, on these three separate occasions, for rummage sales. The lease provides: "And it is hereby mutually agreed, by and between the parties of the first and second part, that said store room, No. 110 East Pikes Peak avenue, is to be occupied by the party of the second part, for the purpose of conduct-

ing the .business of a restaurant and cigar store; and for no other business, and the brick building in the rear of the said store room, is to be occupied by the said party of the second part, as a bakery and a cold storage meat supply department, for and in connection with said restaurant and cigar store; and for no other business, —''

The contention of the plaintiff in error that the clause ''and for no other business'' is so all-exclusive that the three rummage sales of the churches in the restaurant, constituted ''conducting business'' within the terms of the lease, is not a construction to which we can give our assent. It is true that the word ''business'' has a large significance, and has been defined to embrace everything about which a person can be employed. Black, Law Dictionary. But it seems certain that the word ''business'' was not so used by the lessor and lessee in this instrument. The permissive ''business'' named in the lease was an occupation and use of the premises, permanent and continuous in its character, as distinguished from a single act or business transaction, or an occasional day's use of the premises, without rent or expectancy of profit to any one. To give the clause ''and for no other business'' such a broad construction, as urged by the plaintiff in error, would have the effect of inhibiting the lessee, on pain of forfeiture, from even permitting a newsboy, who sells papers as a livelihood, from vending his newspapers on the premises, and would also forbid the lessee from employing a professional orchestra to regularly play in the restaurant, and would likewise forbid the defendant in error from purchasing, at the cigar counter, from a broker, a certificate of stock, or a bond, or a note, or to make a subsequent resale of the same, at the same place, or from purchasing or selling a city lot, without incurring the liability of forfeiture, and the loss, thereby, of his $15,000 worth of improvements and restaurant fixtures. The doing of a single act, or several acts, pertaining to another business, separate,

and apart from the restaurant and cigar business, cannot be considered as engaging in, or carrying on, or conducting, that particular business. "Business" means constant employment or a regular occupation, and implies the idea of permanence. *Down v. Comstock,* 318 Ill. 445, 149 N. E. 507.

It appears that the restaurant and cigar store remained in the same unchanged condition in every respect, before, during, and after the rummage sales. The churches paid nothing for the use of the restaurant room, and made no alterations or changes therein, and made no addition thereto. The rummage sale was not a permanent, regular, continuous occupation or employment, but a transitory, fleeting event, which took place in the room of the permanently established restaurant and cigar store of the lessee.

We conclude that the rummage sales did not constitute "business" in the sense in which that word was used in executing the lease.

The judgment is affirmed.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE BURKE and MR. JUSTICE WALKER concur.