CHESTER E. BECKER, PROSECUTOR, v. HAROLD E. PICK-
ERSGILL, RECORDER, AND THE CITY OF PERTH AM-
BOY, RESPONDENTS.

Submitted May 11, 1928—Decided December 13, 1928.

Before Justices TRENCHARD, KALISCH and LLOYD.

For the prosecutor, *Leo S. Lowenkopf.*

For the respondents, *Harry S. Medinets.*

The opinion of the court was delivered by

KALISCH, J.   The prosecutor, by writ of *certiorari,* sued
out of this court, seeks to review the validity of a conviction
and judgment entered thereon against him in the recorder's
court of the city of Perth Amboy, on March 6th, 1928, on a

complaint charging the prosecutor with a violation of section 2 of an ordinance of the city of Perth Amboy, entitled "An ordinance to provide for the examination and registration of master electricians and journeymen electricians and fix the fees for such registrations and to provide penalties for the failure to comply with the provision thereof."

The particular violation charged against the prosecutor, and of which charge he was convicted, is that he engaged in the business of a master electrician in the city of Perth Amboy, without first having passed an examination and registered as a master electrician, as provided in and under the provisions of said ordinance.

The essential facts, as stipulated between counsel of the respective parties, on which the conviction was had and the judgment rendered, are substantially as follows: The prosecutor is and has been a resident of the city of Perth Amboy for a period of two years and six months; that during the past five years he has been engaged in the electrical contracting business in the various municipalities of Middlesex county; that he entered into a contract for the wiring of a four-family house in the city of Perth Amboy, and on the 23d day of February, 1928, he made an application in writing to the city electrician of the city of Perth Amboy, for a permit to install the electric wiring in said premises, and at which time a tender was made of the legal fee, fixed by the rules and regulations of the electrical wiring ordinance of the city of Perth Amboy, but the said city electrician refused to accept said application or legal fee tendered to him therefor, and further refused to issue such permit, giving as a reason for his refusal that the ordinance forbids the granting of such a permit because the prosecutor was not a master electrician; that the prosecutor did, on the 25th day of February, 1928, commence to wire said premises, notwithstanding that he was not a master electrician and had no license permitting him to do such wiring.

Four reasons are presented and urged in the brief of counsel, on behalf of the prosecutor, for setting aside the conviction and judgment. Those reasons are as follows: (1) The city

of Perth Amboy has no authority to license electricians. (2) The said ordinance is not designed to promote the public health, safety and general welfare. (3) The said ordinance is not designed to regulate, and is, in fact, one for revenue only. (4) Said ordinance is unconstitutional in that it deprives the prosecutor of his personal right and property, and is a denial to him of the equal protection of the law.

The first reason relied on by the prosecutor is destitute of merit.

By virtue of the statute of 1917, chapter 152, article 15, section 1, entitled "An act concerning municipalities," as amended by the laws of 1918, chapter 252, page 958, there is express authority conferred upon municipalities "to make, enforce, amend or repeal ordinances to license and regulate, *inter alia,* the various classes of businesses and occupations designated in subdivision (d), page 959, 'lumber and coal yards, stores for the sale of meats, groceries and provisions, dry goods and merchandise, and goods and chattels of every kind, and all other kinds of business conducted in such city other than those herein mentioned, the place or places of business or premises in which or at which the different kinds of business or occupations are to be carried on.' "

The prosecutor is engaged in a business or occupation, and therefore comes clearly within the scope of the above statutory provision.

The second reason advanced on behalf of the prosecutor, to set aside the conviction and judgment, is that the ordinance is not designed to promote the public health, safety and general welfare.

This assertion is manifestly without any support from a fair reading and plain purport of the ordinance.

The ordinance is entitled "An ordinance to provide for the examination and registration of master electricians and journeymen electricians and fix the fees for such registration and to provide penalties for the failure to comply with the provisions thereof."

Section 2 of the ordinance provides, in substance, that every person, firm or corporation engaging, or who shall here-

after engage, in the business of a master electrician in the city of Perth Amboy, shall appear in person at the office of the city electrician, and after satisfying him and the city examining board as to the applicant's qualifications, he shall register and receive a certificate, which shall entitle him to practice as a master electrician in the city of Perth Amboy. For this certificate the master electrician is obligated to pay the sum of $50, and $5 for renewal, and $5 for each examination, all of which fees are paid to the city treasurer.

The examination is to consist of the National Underwriters' rules and regulations, city ordinances, and practical questions in regard to wiring. The board of examiners shall be composed of five members appointed by the board of aldermen, two of whom shall be master electricians of Perth Amboy, two journeymen electricians of Perth Amboy, and the city electrician, and three of the said members shall constitute a quorum of the board.

The ordinance further provides that all certificate holders shall register their names, residence and place of business in a book furnished for that purpose, and that said place of business to be facing the street, with certificate of master electrician so displayed as to be seen by the public, and in case of removal, certificate holder shall notify the department at once.

Section 3 of the ordinance, in substance, ordains that any persons, firms, &c., who shall violate any of the provisions of the ordinance, shall incur a penalty of $2 nor more than $200.

As has already been pointed out, the prosecutor was not a licensed master electrician, therefore, by his act to install the electric wires in the building, without first having obtained the license required by the ordinance entitling him to act as a master electrician, he subjected himself to the penalty imposed.

It is a matter of common knowledge, arising out of experience, that the mechanics of electricity requires technical knowledge and skill in order to guard the safety, health and general welfare of the public, against harmful and destructive results, through unskillful or improper installation of electric wires.

The application and use of electricity for locomotion, heating, lighting and other utilities, both public and private, and especially in the installation of the electric wires in public buldings, stores and private dwellings, are essential factors to be taken into account on the question of the legal propriety of a police regulation to the end, to prevent incompetent persons from exercising, without due authorization, a business or occupation fraught with danger, to the public safety, health, and general welfare. It is a matter of general history of the use of electrical power that there is much greater hazard of injury to life, limb and property, as a result of the use and application of electricity in the hands of the ignorant than there otherwise would have been if only those who are skilled in the work were entrusted with the task.

Under point three of the brief of counsel of prosecutor, it is argued that the ordinance is not designed to regulate, and is in fact one for revenue only.

There is no legal force in this contention. A plain reading of the ordinance confutes any such construction as is attempted to be placed upon it by counsel of prosecutor.

It is quite clear that the law-making power of this state has delegated to municipalities not only the power to regulate, but also the power to tax for revenue, and that both of these powers may be unitedly exercised. The ordinance in the instant case does both.

In the case *sub judice,* it appears by the legislative will, as indicated in section 1, subdivision (d), as amended (*Pamph. L.* 1918, *p.* 959), and by section 2 (*Pamph. L.* 1917, *p.* 359), express power to tax for revenue is given to the municipalities in this language: "Such governing body shall have power to fix the fees for such licenses which may be imposed for revenue." * * *

In *Muhlenbrinck* v. *Commissioners,* 42 *N. J. L.* 364, Justice Knapp, speaking for the Supreme Court (at *p.* 367), says: "Authority under a charter, to pass by-laws and ordinances to license, control, regulate or prohibit a business or traffic within a municipality, gives no power to impose a tax for revenue purposes. The powers are essentially different and

distinct. They may be unitedly exercised if such appears to be the legislative will, but between them there is no necessary or legal connection." To the same effect is *Cape May* v. *Cape May Trans. Co.*, 64 *Id.* 80, 85; *Dunn* v. *City of Hoboken*, 85 *Id.* 79, 83.

The fourth and last point argued in the brief of counsel of prosecutor is that the ordinance is unconstitutional in that it deprives the prosecutor of his personal rights and property, and is a denial to him of the equal protection of the law.

The broad assertion of counsel of prosecutor that the ordinance in question deprives the latter of his personal rights and property, finds no support from a plain reading of the ordinance. One of the results of being a member of organized society, under the constitution and laws, unquestionably is the yielding by the individual of certain absolute rights for the benefit and welfare of the community which he joins. *Salus populi suprema lex.* Such natural and absolute rights which the individual possessed become as to him as a member of civil society, purely relative, and therefore are subject to regulation. The safety and general welfare of the community require that certain businesses and occupations, because of their dangerous tendencies to injure the safety, health or general welfare of the public, require regulation, and, hence, the requirement of a license to carry on such businesses or occupations, and the imposition of a tax for revenue are nothing more than the proper exercise of the police power to safeguard the community, and such legislation is permissible.

For the reasons stated, the writ is dismissed and judgment is affirmed, with costs.