HAZEN et al., Commissioners of District of Columbia, v. NATIONAL RIFLE ASS'N OF AMERICA, Inc.

No. 7090.

United States Court of Appeals for the District of Columbia.

Decided Dec. 5, 1938.

Elwood H. Seal, Corp. Counsel, Vernon E. West, Principal Asst. Corp. Coun-

434

sel, and James W. Lauderdale, Asst. Corp. Counsel, all of Washington, D. C., for appellants.

Charles V. Imlay and John R. Reed, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

MILLER, Associate Justice.

Appellants filed a petition in the lower court for a writ of mandamus [1] to compel appellee to file with the Assessor of the District of Columbia returns for the fiscal years ending June 30, 1934 to 1937, inclusive, of the personal property, tangible and intangible, owned and held by it in its private capacity or as a fiduciary, for the purpose of assessment for taxation.[2] The court overruled appellants' demurrer to appellee's answer; appellants elected to stand on the demurrer; the petition was thereupon dismissed and the rule to show cause, theretofore issued, was discharged. This appeal is from the order dismissing the petition and discharging the rule.

Appellee, the National Rifle Association of America, is a nonstock corporation organized under the laws of the State of New York, and, since about 1912, has maintained its sole office in the District of Columbia. In its answer in the lower court it alleged that it was a benevolent, charitable and scientific institution incorporated under the laws of the United States and consequently that its property was exempt from taxation because of the provisions of Section 755, Title 20 of the D.C.Code, 1929 (Act of July 1, 1902, 32 Stat. 620, c. 1352, § 6, par. 10).[3] This contention has been abandoned on appeal and it is not necessary for us to consider it in either phase. Appellants conceded on argument that appellee is not required to file a return if its property is exempt from taxation. Whether some of appellee's property is exempt or otherwise not subject to taxation is also immaterial, in view of the nature of the present case. If any of it is liable to taxation, appellee is obliged to make the return required by law and, in the event of its failure, may be compelled to comply.[4]

Appellee assumes on this appeal that appellants' demurrer admitted the conclusion, pleaded in its answer, that all its property was used for educational purposes, with the resulting necessary conclusion that such property is exempt from taxation under Section 713, Title 20 of the D.C.Code, 1929 (Act of July 1, 1902, 32 Stat. 616, c. 1352, § 5).[5] But the assumption is unsound and the conclusion does not follow. The answer, after setting out with particularity those parts of its certificate of incorporation and by-laws which disclosed its purposes, alleged: "... respondent [appellee] is therefore advised ... that the property of respondent corporation is all used for 'educational purposes' within the meaning of T. 20, § 713 of said Code." This is a conclusion of law as to the effect and purpose of the statute, and for that reason was not admitted by the demurrer.[6]

---

[1] Act of February 18, 1929, 45 Stat. 1227, c. 259, § 5, D.C.Code 1929, tit. 20, § 758: "If any person neglects or refuses to file a return of personal property as required by law, and the assessor certifies to the board of commissioners that, in his opinion, the best information obtainable does not afford a satisfactory basis for assessment, the board of commissioners may, by petition to the Supreme Court of the District of Columbia [now the District Court of the United States for the District of Columbia] for mandamus against such person, compel the filing of a sworn return, and in such case the court shall require the person at fault to pay all expenses of the proceeding."

[2] D.C.Code 1929, tit. 20, §§ 753, 754.

[3] "The following personal property shall be exempt from taxation.
"First. The personal property of all library, benevolent, charitable, and scientific institutions incorporated under the laws of the United States or of the District of Columbia and not conducted for private gain."

[4] See note 1, supra.

[5] "Property used for educational purposes that is not used for private gain shall be exempt from taxation, and all other property used for educational purposes shall be assessed and taxed as other property is assessed and taxed."

[6] Pennie v. Reis, 132 U.S. 464, 469, 470, 10 S.Ct. 149, 33 L.Ed. 426; Nortz v. United States, 294 U.S. 317, 324, 325, 55 S.Ct. 428, 79 L.Ed. 907, 95 A.L.R. 1346; Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 303 U.S. 54, 57, 58 S.Ct. 466, 82 L.Ed. 646; Pierce Oil Corp. v. City of Hope, 248 U.S. 498, 500, 39 S.Ct. 172, 63 L.Ed. 381. Cf. Interstate Land Co. v. Maxwell Land Grant Co., 139 U.S. 569, 577, 578, 11

Moreover, the conclusion of the pleader was not admitted by demurrer, in the present case, for a further reason, *i. e.*, because it is a conclusion contrary to the specific facts alleged and from which it purports to be drawn,[7] to say nothing of the purpose-revealing title of the New York Act under which appellee was incorporated, and which also appears in its answer.[8] It is certainly not usual for societies and clubs, which are organized for social and recreative purposes, to be so engaged that all their property is used for educational purposes. The certificate of incorporation[9] and the by-laws[10] of appellee, which are set out in its answer, list the following objects and purposes of the association: (1) to educate the youth of the nation in marksmanship; (2) to improve the marksmanship of its members; (3) to provide a suitable range or ranges in the vicinity of the City of New York; (4) to secure the issuance of arms and ammunition to those practicing on ranges; (5) to encourage competition in marksmanship between teams and individuals in all parts of the United States; (6) to promote the introduction of the system of aiming drill and rifle practice as part of the military drill of the National Guard in all the states; (7) to encourage marksmanship throughout the United States, particularly among civilians, both as a sport and for the purpose of qualifying as finished marksmen those individuals who may be called upon to serve in time of war; (8) to create a public sentiment for the encouragement of rifle practice both as a sport and as a necessary means of national defense; and (9) to encourage legislation for the establishment and maintenance of suitable ranges. On argument, appellee stated that it engaged in lobbying activities not merely to encourage legislation for the establishment and maintenance of ranges but also (10) to prevent the passage of certain legislation concerning the regulation of manufacture and distribution of firearms.[11]

No one of these objects and activities is necessarily or exclusively educational in

---

[7] S.Ct. 656, 35 L.Ed. 278; Equitable Life Assurance Society v. Brown, 213 U.S. 25, 43, 29 S.Ct. 404, 53 L.Ed. 682; Interstate Commerce Comm. v. Goodrich Transit Co., 224 U.S. 194, 204, 32 S.Ct. 436, 56 L.Ed. 729; Bishop & Co., Inc., v. Midland Bank, 9 Cir., 84 F.2d 585, 587, certiorari denied 299 U.S. 587, 57 S.Ct. 111, 81 L.Ed. 432; Clark v. Mutual Reserve Fund Life Ass'n, 14 App.D.C. 154, 172, 43 L.R.A. 390; Donaldson v. Wright, 7 App.D.C. 45, 54.

[7] Dillon v. Barnard, 21 Wall. 430, 437, 22 L.Ed. 673; Gould v. Evansville & Crawfordsville R. Co., 91 U.S. 526, 536, 23 L.Ed. 416; Clark v. Mutual Reserve Fund Life Ass'n, supra note 6; Farm & Home Savings & Loan Ass'n v. Armstrong, 337 Mo. 349, 355, 85 S.W.2d 461, 464; Culbreath v. M. Kutz Co., 37 Ga. App. 425, 140 S.E. 419, 421.

[8] "An Act for the incorporation of Societies or Clubs, for certain social and recreative purposes . . . ."

[9] "II. Object:
"The object for which said association is formed, is the improvement of its members in mark'manship, and to promote the introduction of the system of aiming drill and rifle practice as part of the military drill of the National Guard of this and other states, and for those purposes to provide a suitable range or ranges in the vicinity of the City of New York."

[10] "Article One
"Objects
"In accordance with and in addition to the purposes and objects of the Association as set forth in the original and amended charter, the objects of this Association shall be to educate the youth of the nation in marksmanship, to encourage marksmanship throughout the United States, particularly among civilians, both as a sport and for the purposes of qualifying as finished marksmen those individuals who may be called upon to serve in time of war; to encourage competition in marksmanship between teams and individuals in all parts of the United States; to encourage legislation for the establishment and maintenance of suitable ranges; to secure the issuance of arms and ammunition to those practicing on such ranges; and to create a public sentiment for the encouragement of rifle practice both as a sport and as a necessary means of national defense."

[11] To ascertain whether a corporation falls within an exemption statute, it must be judged not only by its declared objects but also by what activities are actually carried on. See Bistline v. Bassett, 47 Idaho 66, 71, 272 P. 696, 697, 698, 62 A.L.R. 823; Catholic Woman's Club v. City of Green Bay, 180 Wis. 102, 192 N.W. 479; University Club v. Lanier, 119 Fla. 146, 161 So. 78; People ex rel. Thompson v. Dixon Masonic Bldg. Ass'n, 348 Ill. 593, 181 N.E. 434.

character. The promotion, propaganda and lobbying activities implicit in the eighth, ninth and tenth are definitely not educational.[12] The first to seventh may be in some small measure educational; they may. be purely for sport and recreation; they may involve promotion, propaganda and lobbying, as in the case of the eighth, ninth and tenth. It is idle to urge by way of analogy that because the officers of an educational institution or association may engage occasionally in lobbyist or propagandist activities, such an institution should be regarded in the same light as one which engages casually or incidentally or occasionally in educational activities.[13] It is the primary use made of the property which determines whether it is exempt. School of Domestic Arts and Science v. Carr, 322 Ill. 562, 568, 153 N.E. 669, 671.

■ Assuming, therefore, solely for the purpose of argument, that the allegation concerning educational use is a conclusion of fact; reading it in connection with the particular allegations of objects and purposes; and giving to them all the most favorable possible interpretation under the authorities which define educational use, it is clear, in our view, that at most the educational phase of appellee's activities is incidental and collateral to the social, recreative, promotional and propaganda phases which constitute its major reasons for existence. It does not, therefore, in any real sense relieve the government of its burden of public education.[14] In fact, if appellee should succeed to any large extent in teaching the youth of the nation to shoot, without at the same time inculcating the discipline of military training, which is a fundamental part of the curriculum of colleges and academies maintained and approved by the government to provide such training, it is much more probable that the result would be, instead, a tremendous increase in the governmental burden of crime control. Even well recognized methods of youth-training, such as physical education, when distorted and diverted from their legitimate uses, may cease to have educational character. And this may be true, even though such distortion and diversion occurs under the direction of educational institutions such as colleges and universities.[15] No admission of performance, or even of capacity to perform the difficult task of military training, resulted from appellants' demurrer, in spite of the conclusion of law pleaded in appellee's answer.

For all these reasons, therefore, the necessity for governmental subsidy or immunity which is implicit in tax exemption —upon the theory that the government is relieved of its burdens[16]—fails in the present case.

---

[12] Vanderbilt v. Commissioner, 1 Cir., 93 F.2d 360, 362: "The procuring of the enactment * * * of bills, their advocacy, the furnishing of facts and information in their support, and the payment of the cost of carrying on such activities are not educational but political." See also, Leubuscher v. Commissioner, 2 Cir., 54 F.2d 998, 1000. Cf. Cochran v. Commissioner, 4 Cir., 78 F.2d 176.

[13] See Slee v. Commissioner, 2 Cir., 42 F.2d 184, 72 A.L.R. 400 (American Birth Control League); State of Missouri v. Business Men's Athletic Club, 178 Mo. App. 548, 564, 565, 163 S.W. 901, 907, 908 (athletic club); Memphis Chamber of Commerce v. Memphis, 144 Tenn. 291, 232 S.W. 73 (chamber of commerce); In re Dunham's Estate, 121 Misc. 589, 201 N.Y.S. 847 (local chapter of a college fraternity); In re Daly's Estate, 79 Misc. 586, 141 N.Y.S. 199, affirmed 163 App.Div. 949, 148 N.Y.S. 1111, affirmed 215 N.Y. 620, 109 N.E. 1072 (American Society for the Prevention of Cruelty to Animals); City of Knoxville v. Ft. Sanders Hosp., 148 Tenn. 699, 257 S.W. 408 (local hospital); State v. Rowan, 171 Tenn. 612, 106 S.W.2d 861 (University Club); Turnverein "Lincoln" v. Board of Appeals of Cook County, 358 Ill. 135, 192 N.E. 780 (gymnastic and athletic association). See also, Cardinal Pub. Co. v. Madison, 205 Wis. 344, 237 N.W. 265, affirmed 208 Wis. 517, 243 N.W. 325 (college newspaper).

[14] District of Columbia v. Mt. Vernon Seminary, 69 App.D.C. 251, 100 F.2d 116.

[15] Allen v. Regents, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448. See also, dissenting opinion of Hutcheson, J., in Page v. Regents, 5 Cir., 93 F.2d 887, 893.

[16] District of Columbia v. Mt. Vernon Seminary, supra note 14; Lloyd Library & Museum v. Chipman, 232 Ky. 191, 22 S.W.2d 597; Miller v. Lamar Life Ins. Co., 158 Miss. 753, 773, 131 So. 282, 286; People ex rel. Carr v. Alpha Pi, 326 Ill. 573, 158 N.E. 213, 54 A.L.R. 1376; State v. Snyder, 29 Wyo. 199, 212 P. 771; Carteret Academy v. State Board of Taxes and Assessment, 102 N.J.L. 525, 133 A. 886; Beta XI Chap-

Appellee contends further that its personal property is exempt under the provisions of Section 713, Title 20 of the D. C.Code, 1929, which is the second paragraph of Section 5, Chapter 1352 of the Act of July 1, 1902, 32 Stat. 616. As appellee's contention that its property is all being used for educational purposes must be rejected, it is unnecessary for us to decide whether the language in question was intended to have general application to all property or whether it should be limited to real estate. In any event, it refers only to property used for educational purposes.

██ Appellee also contends that its intangible personal property is exempt from taxation under the provisions of Section 754, Title 20 of the D.C.Code, 1929 (Act of September 1, 1916, 39 Stat. 717, c. 433, § 11, as amended),[17] on the theory that it is neither a resident nor engaged in business within the District. The principle has long been settled that a corporation is a resident of the state in which it was incorporated.[18] As appellee was incorporated under the laws of New York, its legal residence is in that State even though its principal office is located in the District of Columbia. On the other hand, it is clear that appellee enjoys and exercises within the District the privilege of a situs[19] for carrying on its activities, whatever they may properly be called, as well as capacity to sue and be sued, to be served with process, to maintain offices and a staff of employees, to collect, expend, invest and reinvest large sums of money. However, it contends that it is not en-

gaged in business within the meaning of the code section. It urges that its aims are like those of a chamber of commerce or club,[20] even apart from the matter of educational activities; that it distributes no dividends and that its funds come from contributions of members, not from commercial relations with either the public or its own members.

What then is the meaning of the term "engaged in business" as employed in the statute? Webster's Dictionary defines "business" as "Any particular occupation or employment habitually engaged in, especially for livelihood or gain." In its broadest meaning therefore one could be said to be engaged in business if it were his habit to rummage through garbage cans in search of food, after the manner of the human derelicts who may be seen thus employed on the back streets of our large cities. However, rarely do we find the term employed so broadly in statutes or cases, although the language of a Tennessee statute is not far from it, i. e., "... 'any transaction with persons or any transaction concerning any property situated in this state through any agency whatever ....'"[21]

██ A consideration of the cases suggests extremes in meaning as follows: On the one hand, persons, associations and corporations engaged in manufacturing, trade and commerce for profit or gain, are beyond question engaged in business. On the other hand, the performance of essential governmental functions is not business within the meaning of statutes such as that here involved.[22] Persons or agen-

ter v. New Orleans, 18 La.App. 130, 137 So. 204; Connecticut Junior Republic Ass'n v. Litchfield, 119 Conn. 106, 174 A. 304, 95 A.L.R. 56.

[17] "The moneys and credits, including moneys loaned and invested, bonds and shares of stock * * * of any person, firm, association, or corporation resident or engaged in business within said District shall be scheduled and appraised in the manner provided by section 753 of this title for listing and appraisal of tangible personal property * * *."

[18] Bank of Augusta v. Earle, 13 Pet. 519, 10 L.Ed. 274; Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841; Barbour v. Paige Hotel Co., 2 App.D.C. 174; Babcock & Wilcox Co. v. Spaulding, 1 Cir., 86 F.2d 256.

[19] See Wheeling Steel Corp. v. Fox,

298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143; First Bank Stock Corp. v. Minnesota, 301 U.S. 234, 57 S.Ct. 677, 81 L.Ed. 1061, 113 A.L.R. 228; Smith v. Ajax Pipe Line Co., 8 Cir., 87 F.2d 567, 571, certiorari denied 300 U.S. 677, 57 S.Ct. 670, 81 L.Ed. 882. Cf. Act of July 3, 1926, 44 Stat. 833, c. 759, § 2, as amended, 45 Stat. 1227, D.C.Code 1929, tit. 20, § 756.

[20] See Memphis Chamber of Commerce v. Memphis, 144 Tenn. 291, 232 S.W. 73.

[21] Romaine v. Union Ins. Co., C.C.W.D. Tenn., 55 F. 751, 754. See also, In re Alabama & C. R. Co., 1 Fed.Cas. p. 271, No. 124; Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312.

[22] See Brush v. Commissioner, 300 U. S. 352, 364 et seq., 57 S.Ct. 495, 81 L.Ed. 691, 108 A.L.R. 1428; Flint v.

cies so occupied are not engaged in business, but instead are invested with a portion of the sovereign power which they exercise for the public benefit.[23] Between these two extremes it is difficult to find universally applicable principles. The cases vary widely even in their interpretation of similar statutes. As was pointed out in Lindner Packing & Provision Co. v. Industrial Comm., 99 Colo. 143, 60 P.2d 924, 106 A.L.R. 1498, two meanings have been attributed to the term, one broad and one narrow, and it is necessary to determine in each case which meaning was intended. Under particular statutes it has been held that an occupation, in order to constitute a business, must be pursued for livelihood or profit;[24] or that it shall be of a nature specified in the statute.[25]

■ On the face of the statute[26] there is nothing to indicate that Congress intended so to limit it, as to make it applicable *only* to persons, associations and corporations engaged in a commercial business for profit. This fact is significant in view of the further fact that taxing statutes frequently specify carrying on business *for profit* as a basis for taxation.[27] Moreover, the contrary intention appears from the fact that even as to the property of library, benevolent, charitable and scientific institutions, such property is exempt only when it belongs to such institutions as are incorporated under the laws of the United States or the District of Columbia.[28]

Neither is the source of its income of particular importance.[29] It may be receiving interest from an endowment fund; it may be collecting tuition from students, dues from members, dividends from stock. Nor is it necessary that an institution should earn income or profit in order that it may be said to be carrying on business.[30] It may be losing money every day; it may be rapidly approaching bankruptcy; it may be actually in the hands of a receiver and still be conducting business.[31]

Stone Tracy Co., 220 U.S. 107, 157, 158, 31 S.Ct. 342, 55 L.Ed. 389, Ann. Cas.1912B, 1312; Ohio v. Helvering, 292 U.S. 360, 368, 54 S.Ct. 725, 78 L.Ed. 1464; Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384; Williams v. City of Talladega, 226 U.S. 404, 33 S.Ct. 116, 57 L.Ed. 275; United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567; New York ex rel. Rogers v. Graves, 299 U.S. 401, 408, 57 S.Ct. 269, 81 L.Ed. 306. Cf. Los Angeles County v. Industrial Accident Comm., 89 Cal.App. 736, 740, 265 P. 362, 364 (special statutory inclusion for purposes of Workmen's Compensation Act); Massolini v. Driscoll, 114 Conn. 546, 159 A. 480 (idem).

[23] See Dade County v. State, 95 Fla. 465, 116 So. 72; State of North Carolina ex rel. Harris v. Watson, 201 N.C. 661, 161 S.E. 215, 79 A.L.R. 441; Moxon v. State ex rel. Binyon, 36 Ohio App. 24, 172 N.E. 680; City of Pekin v. Industrial Comm., 341 Ill. 312, 173 N.E. 339; Martin v. Fisher, 108 Cal.App. 34, 291 P. 276; State ex rel. Garrison v. McLaurin, 159 Miss. 188, 131 So. 89; Donges v. Beall, Tex.Civ.App., 41 S.W.2d 531; State ex rel. Davis v. Botts, 101 Fla. 361, 134 So. 219. See also, New York ex rel. Rogers v. Graves, supra note 22.

[24] Deering v. Blair, 57 App.D.C. 367, 23 F.2d 975; Hanson v. Culton, 269 Mass. 471, 169 N.E. 272; DeBlois v. Commissioner, 276 Mass. 437, 177 N.E. 566; Morgan v. Salt Lake City, 78 Utah 403, 411, 3 P.2d 510, 513; Whipple v. Commissioner, 263 Mass. 476, 485, 486, 161 N.E. 593, 595.

[25] Norman v. Southwestern R. Co., 42 Ga.App. 812, 157 S.E. 531.

[26] Act of September 1, 1916, 39 Stat. 717, c. 433, § 11, as amended, D.C.Code 1929, tit. 20, § 754.

[27] See, for example, the definition of the term "business" in the tax on privilege of doing business. Act of August 17, 1937, 50 Stat. 688, c. 690, § 1(d), D.C. Code (Supp. III, 1937) tit. 20, § 970(d). See also, Flint v. Stone Tracy Co., 220 U.S. 107, 142, 143, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312 (federal corporation tax law of 1909).

[28] Act of July 1, 1902, 32 Stat. 620, c. 1352, § 6, par. 10, as amended, D.C. Code 1929, tit. 20, § 755.

[29] Trinidad v. Sagrada Orden, 263 U.S. 578, 581, 44 S.Ct. 204, 68 L.Ed. 458. Cf. New York Society v. MacFadden Publications, Inc., 129 Misc. 408, 221 N.Y.S. 563, 565, affirmed 222 App.Div. 739, 226 N.Y.S. 870.

[30] New York Society v. MacFadden Publications, Inc., supra note 29.

[31] See Atlantic Postal Telegraph-Cable Co. v. City of Savannah, 133 Ga. 66, 74, 65 S.E. 184, 188; Whipple v. Commissioner, 263 Mass. 476, 485, 486, 161 N.E. 593, 595.

In a number of cases it has been held that professions are not included within the term "trade or business."[32] But it is not necessary to determine that question in the present case for appellee is not engaged in a profession.[33] A single or occasional disconnected act does not constitute engaging in business.[34] It requires that acts of business be conducted, prosecuted and continued "not from time to time but all the time." (Lewellyn v. Pittsburgh, B. & L. E. R. Co., 3 Cir., 222 F. 177, 186), or at least for a substantial portion of the time.[35] But appellee's acts are continuous and uninterrupted. It has been held under particular statutes that corporations organized for social purposes, or for the general welfare of society, are not engaged in business;[36] but in other cases exactly the contrary has been held.[37] And the Supreme Court of the United States has said that where a state—perhaps even in its sovereign capacity—engages in a business, i. e., an activity which does not constitute an essential governmental function, and even though it is not conducted for profit, but instead, for the facilitating of commerce and improving harbors, it subjects itself to regulatory action in the same manner as a private corporation. United States v. California, 297 U.S. 175, 183, 185, 56 S.Ct. 421, 80 L.Ed. 567.

The term "engaged in business," together with its synonyms,[38] "carrying on business" and "doing business," has been most frequently interpreted and defined in connection with laws taxing and regulating the activities of corporations in states other than states of residence. Here again, such statutes frequently speak in terms of business conducted for profit or gain; but, as previously noted, that limitation does not appear in the pertinent statute in the present case;[39] hence, interpretations based thereon are inapplicable.

Another group of cases interpreting statutes relating to foreign corporations, which statutes do not contain a qualification concerning business conducted for profit or gain, hold that such corporations are engaged in business when they are engaged in the activities for which they

---

[32] Hughes v. Commissioner, 10 Cir., 38 F.2d 755, 758, 759 (profession of law); People v. Kelly, 255 N.Y. 396, 175 N.E. 108 (profession of singing or of music). But cf. Semple v. Schwarz, 130 Mo. App. 65, 109 S.W. 633 (profession of medicine); Earle v. Commonwealth, 180 Mass. 579, 63 N.E. 10, 57 L.R.A. 292, 91 Am.St.Rep. 326 (idem); Young v. Board of Medical Examiners, 93 Cal. App. 73, 268 P. 1089 (idem); In re Kaffenburgh, 188 N.Y. 49, 56, 57, 80 N.E. 570, 572, 573 (profession of law).

[33] See Building Commissioner v. McManus, 263 Mass. 270, 160 N.E. 887 (undertaking a business, not a profession); In re Dawson, 136 Okl. 113, 277 P. 226 (idem); Becker v. Pickersgill, 105 N.J.L. 51, 143 A. 859 (master electricians are engaged in business, not profession); Iselin v. Flynn, 90 Misc. 164, 154 N.Y.S. 133 (dressmaking a business).

[34] Hutchings v. Burnet, 61 App.D.C. 109, 58 F.2d 514; Liquid Veneer Corp. v. Smuckler, 9 Cir., 90 F.2d 196, 202; Washburn v. Commissioner, 8 Cir., 51 F. 2d 949, 953; Hughes v. Pallas, 84 Colo. 14, 267 P. 608.

[35] Walsh v. Industrial Comm., 345 Ill. 366, 369, 178 N.E. 82, 83; Los Angeles County v. Industrial Accident Comm., 89 Cal.App. 736, 740, 265 P. 362, 364. Cf. Deering v. Blair, 57 App.D.C. 367, 23 F. 2d 975.

[36] See Jones v. Rhea, 130 Va. 345, 107 S.E. 814. But note that this case was expressly limited by Knights of Ku Klux Klan v. Commonwealth ex rel. State Corporation Comm., 138 Va. 500, 508, 122 S.E. 122, 125, in such manner as to make it inapplicable to the present case. See also, Easterbrook v. Hebrew Ladies' Orphan Society, 85 Conn. 289, 298–300, 82 A. 561, 564, 565, 41 L.R.A.,N.S., 615 (Decision confined to the language of a restrictive covenant, which was held not to bar certain kinds of business not for livelihood or profit); Cuzner v. California Club, 155 Cal. 303, 100 P. 868, 20 L.R.A.,N.S. 1095 (However, the court expressly recognized that under an ordinance properly drawn, such a club could be taxed for doing business).

[37] See Army and Navy Club v. District of Columbia, 8 App.D.C. 544; Brooklyn Children's Aid Society v. Industrial Board, 136 Misc. 379, 240 N.Y.S. 70, 73, affirmed 231 App.Div. 845, 246 N.Y. S. 907, affirmed 256 N.Y. 651, 177 N.E. 178. And see cases cited in note 40, infra.

[38] Von Baumbach v. Sargent Land Co., 242 U.S. 503, 514, 515, 37 S.Ct. 201, 61 L.Ed. 460; People ex rel. Manila Electric R. & Lighting Corp. v. Knapp, 229 N.Y. 502, 510, 128 N.E. 892, 895.

[39] Act of September 1, 1916, 39 Stat. 717, c. 433, § 11, as amended, D.C.Code (1929) tit. 20, § 754.

were incorporated.[40] The present case falls properly within this group.

Appellee collects a minimum of approximately $240,000 to $250,000 per year; expends most thereof each year in paying salaries of officers and employees, and in other respects to further the purposes set forth in the charter and by-laws. Its officers control and manage personal property in the form of office inventories, furniture and equipment, cash on hand and subject to check, securities and savings, which varies in amount from year to year and which in 1936 approximated $140,000. The handling, investment and reinvestment of these substantial funds, by what must be a considerable staff of officers, agents and employees, in our view, clearly constitutes the carrying on of business in the District of Columbia within the meaning of the pertinent statute and the applicable decisions.

The Commissioners are specifically authorized to compel the filing of a sworn return by any person required by law to file such a return.[41] Appellee has failed to show that it comes within any exemption provided by law,[42] and the lower court erred in entering the order from which this appeal was taken.

Reversed.

STEPHENS, Associate Justice, concurs in the result.

---

[40] Chattanooga Nat. Bldg. & Loan Ass'n v. Denson, 189 U.S. 408, 23 S.Ct. 630, 47 L.Ed. 870; State ex rel. Griffith v. Knights of Ku Klux Klan, 117 Kan. 564, 572–574, 232 P. 254, 258, 259, 37 A.L.R. 1267, appeal dismissed 273 U.S. 664, 47 S.Ct. 453, 71 L.Ed. 829; Knights of Ku Klux Klan v. Commonwealth ex rel. State Corporation Comm., 138 Va. 500, 508–510, 122 S.E. 122, 125; Pacific Typesetting Co. v. International Typographical Union, 125 Wash. 273, 216 P. 358, 32 A.L.R. 767; Peterman Construction & Supply Co. v. Blumenfeld, 156 Miss. 55, 125 So. 548; Scene-In-Action Corp. v. Knights of Ku Klux Klan, 261 Ill.App. 153. See Liquid Veneer Corp. v. Smuckler, 9 Cir., 90 F. 2d 196, 202; Central Life Securities Co. v. Smith, 7 Cir., 236 F. 170, 176.

[41] D.C.Code 1929, tit. 20, §§ 753, 754, 758. See note 1, supra. See also, Hazen v. Hardee, 64 App.D.C. 346, 78 F.2d 230; Cogger v. Hazen, 66 App.D.C. 196, 85 F.2d 695, certiorari denied 299 U.S. 598, 57 S.Ct. 191, 81 L.Ed. 441.

[42] See Bank of Commerce v. Tennessee, 163 U.S. 416, 423, 16 S.Ct. 1113, 41 L. Ed. 211; Phœnix Fire & Marine Ins. Co. v. Tennessee, 161 U.S. 174, 179, 16 S.Ct. 471, 40 L.Ed. 660.