474 P.2d 201

**ROCHESTER CAPITAL LEASING CORPORATION, a corporation, Appellant,**

**v.**

**H. Y. "Bert" SPRAGUE, and Catherine Sprague, his wife, Appellees.**

**No. 1 CA–CIV 1067.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 10, 1970.

Rehearing Denied Oct. 6, 1970.

Review Denied Nov. 24, 1970.

Wilson, McConnell & Moroney, by Beverly J. McConnell, Phoenix, for appellant.

David M. Lurie, Phoenix, for appellees.

HAIRE, Judge.

In the trial court, the plaintiff-foreign corporation filed an action to collect rentals due under a personal property leasing contract. The trial court entered summary judgment for the defendant-lessees on the grounds that the contract was null and void because of the failure of plaintiff to comply with the Arizona foreign corporation qualification statutes.[1] In order to uphold the trial court's ruling, the evidence must show (1) that plaintiff was "transacting business in Arizona" within the meaning of the qualification statute at the time the leasing contract was entered into, and (2) that the particular act sought to be declared null and void occurred in Arizona. Neiderhiser v. Henry's Drive-In, Inc., 96

Ariz. 305, 394 P.2d 420 (1964); Bank of America, etc. v. Barnett, 87 Ariz. 96, 348 P.2d 296 (1960); Monaghan & Murphy Bank v. Davis, 27 Ariz. 532, 234 P. 818 (1925); Martin v. Bankers' Trust Co., 18 Ariz. 55, 156 P. 87 (1916). *See also,* Worcester Felt Pad Corp. v. Tucson Airport Authority, 233 F.2d 44 (9th Cir. 1956).

We have examined the record and are of the opinion that neither statutory requirement was fulfilled, and that therefore the judgment for the defendant-lessees must be reversed.

The question of what constitutes the "transaction of business" within a state cannot be considered in the abstract, but rather must be considered in relation to the particular statute or object of inquiry before the court. The question can arise in many different contexts, but the three most common instances relate to (1) the right of a state to subject a foreign corporation to *in personam* jurisdiction by service of process, *see* Reed v. Real Detective Publishing Co., 63 Ariz. 294, 162 P.2d 133 (1945); Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732 (1966); (2) the right to impose a tax on the corporation or certain of its activities within the state, *see* State Tax Commission v. Murray Company of Texas, Inc., 87 Ariz. 268, 350 P.2d 674 (1960); Arizona State Tax Commission v. Ensign, 75 Ariz. 220, 254 P.2d 1029 (1953); and (3) the right to prohibit or impose restrictions or conditions upon the in-state activities of a foreign corporation through foreign corporation qualification statutes, Neiderhiser v. Henry's Drive-In, Inc., 96 Ariz. 305, 394 P.2d 420 (1964); Ranch House Supply Corporation v. Van Slyke, 91 Ariz. 177, 370 P.2d 661 (1962); Union Interchange, Inc. v. Mortensen, 90 Ariz. 112, 366 P.2d 333 (1961); Bank of America, etc. v.

1. A.R.S. § 10–482 provides as follows:

"No foreign corporation shall transact business in this state until it has complied with the requirements of § 10–481, and every act done prior thereto is void."

A.R.S. § 10–481 requires that:

"A. A foreign corporation before entering upon, doing or transacting any business, conducting any enterprise, or engaging in any occupation in this state shall:
[Comply with certain designated filing requirements; appoint a statutory agent; and pay certain fees.]"

Barnett, 87 Ariz. 96, 348 P.2d 296 (1960); National Union Indemnity Co. v. Bruce Bros., 44 Ariz. 454, 38 P.2d 648 (1934); Monaghan & Murphy Bank v. Davis, 27 Ariz. 532, 234 P. 818 (1925); Martin v. Bankers' Trust Co., 18 Ariz. 55, 156 P. 87 (1916).

■ It is apparent from an analysis of the decisions concerning the doing business question that generally the courts require a much stronger showing of in-state activities in order to invoke the sanctions of corporate qualification statutes than is required to subject the foreign corporation to local taxation or to state court jurisdiction through service of process. Filmakers Releasing Organization v. Realart Pictures, Mo.App., 374 S.W.2d 535 (1964); 36 Am.Jur.2d Foreign Corporations § 324, at 318 (1968); 23 The Corporation Trust Company, The Corporation Journal 163–166 (No. 9, 1961); Humboldt Foods, Inc. v. Massey, 297 F.Supp. 236 (N.D. Miss.1968); F. W. Myers & Co. v. Piche, 109 N.H. 357, 252 A.2d 427 (1969). As stated in Filmakers Releasing Organization v. Realart Pictures, *supra*:

> "This much seems to be clear that the greatest amount of business activity is required to subject a corporation to the state's statutory qualification requirements." (374 S.W.2d at 539).

In National Union Indemnity Co. v. Bruce Brothers, 44 Ariz. 454, 38 P.2d 648 (1934), the Arizona Supreme Court, while holding that the many activities of the foreign corporation required qualification in that particular case, recognized the harshness of the law and stated that wherever there was a doubt as to the validity of the contract objected to, that doubt should be resolved in favor of its validity.

With the foregoing in mind, we emphasize that the question before this Court is not whether the facts would have justified a finding that plaintiff-foreign corpo-

ration was doing or transacting business in Arizona sufficient to support *in personam* jurisdiction, or sufficient to uphold the validity of the imposition of a tax. Rather, as stated above, a much stronger showing of in-state contacts is required when the question before the court is whether or not a corporation's activities fall within the proscription of a corporate qualification statute.

■ Turning now to the case at hand, the pleadings, interrogatories and affidavits filed in connection with the motions for summary judgment show that the plaintiff Rochester Capital Leasing Corporation is a New York corporation, engaged in financing through a leasing procedure the acquisition of various products and items used in connection with the running and operation of farms and related agricultural enterprises. The particular transaction here involved originated as follows:

In April of 1964 plaintiff received at its office in New York, through the mail, an application from the defendants requesting that plaintiff lease to defendants certain hydroponic feeding equipment. There had been no prior contact or dealings between plaintiff and the defendants, and plaintiff had no knowledge of the equipment in which the defendants were interested. The defendants had contacted an Arizona dealer in this equipment, had decided that they wanted to purchase the same, and had been told by the dealer that they could acquire it by paying cash or by arranging to lease it through plaintiff. The dealer had a supply of plaintiff's forms,[2] but had no contractual relationship with plaintiff and was not authorized to bind plaintiff in any way. After plaintiff checked the defendants' credit, plaintiff, by mail, advised the defendants that it would approve a leasing arrangement. Defendants then forwarded to the plaintiff, again in New York, an acknowledgment that the equipment specified on the lease application was in their

2. The dealer, Arizona Hydroponics, Inc., had not acquired these forms from the plaintiff, but rather from an Indiana corporation known as Hydroponics, Inc. The record does not show any contractual or other relationship between plaintiff and the Indiana corporation.

possession, was in good order and condition acceptable to them, and requested that plaintiff purchase the equipment from the Arizona dealer, Arizona Hydroponics, for the purpose of consummating the lease. Thereafter, in New York, the plaintiff did accept the lease application by executing the proposed lease agreement. The Arizona dealer then forwarded to the plaintiff an invoice for the purchase price of the equipment and plaintiff paid it. At no time during the transaction did plaintiff have an employee or agent in the state of Arizona[3] nor maintain an office, warehouse, telephone listing or an inventory of goods available for lease in the state of Arizona. The plaintiff did not solicit the defendants' lease application, or participate in any way in the selection or demonstration of equipment, or make any representations to the defendants about the equipment. The plaintiff did not deliver the equipment, install it or service it at any time.

After execution of the lease agreement and payment by plaintiff of the dealer's invoice, defendants made a few of the lease payments to plaintiff, but eventually defaulted and plaintiff sued for the balance due.

The record is devoid of any showing that at the time of the execution of the lease with the defendants, or during its term, plaintiff engaged in any activity *within* the state of Arizona. The record does show that between 1962 and August 1967, plaintiff entered into 20 other leases with lessees who resided in Arizona. These leases were entered into "in a manner similar to" the lease at issue. There is nothing in the record to indicate that any of these other lease agreements were executed in the state of Arizona, or that they were the results of activities of plaintiff which actually occurred in this state.

From the foregoing it is obvious that there has been no showing of any actual activities of plaintiff in Arizona which would support a finding that at the time the lease was entered into plaintiff was transacting business in this state. It is true that under the leasing contract here involved, plaintiff became and remained the owner of the lessor's interest in the personalty. The question thus arises, is the mere continued ownership of such a property interest sufficient to support a finding that plaintiff was doing business in Arizona within the meaning of the corporate qualification statute? We think not. While our appellate courts have not been called upon to rule upon this precise question, the Arizona Supreme Court has ruled that a foreign corporation's retained ownership in goods and merchandise delivered to dealers in this state on consignment is not sufficient to constitute transacting business, Ranch House Supply Corporation v. Van Slyke, 91 Ariz. 177, 370 P.2d 661 (1962); Reed v. Real Detective Publishing Co., 63 Ariz. 294, 162 P.2d 133 (1945); and that absent other activities in this state, the taking and retaining of a chattel or realty mortgage security interest is not sufficient, Monaghan & Murphy Bank v. Davis, 27 Ariz. 532, 234 P. 818 (1925); Martin v. Bankers' Trust Co., 18 Ariz. 55, 156 P. 87 (1916). In Monaghan, while dealing with only one chattel mortgage, the court recognized and held that in order for evidence concerning the recordation in Arizona of other chattel mortgages to be relevant and admissible, there would have to be a showing of activities of the foreign corporation *in* Arizona— that is, that the indebtednesses were incurred *in* Arizona. It appears to us that the retained property interest here involved is somewhat analogous to the foregoing situations, and cannot be held, in and of

---

3. Plaintiff did for a period of time have a "dealer" contract with an Arizona organization, Overstreet & Company, which provided an arrangement whereby the "dealer" would promote plaintiff's leasing plans and receive a commission on leasing plans ultimately accepted by plaintiff. However, under the contract, Overstreet & Company was strictly an independent dealer with no authority to bind plaintiff, or transact any business in plaintiff's name. There is no contention that Overstreet & Company had any connection with the transaction here involved.

itself, to constitute the transacting of business within this state, within the meaning of A.R.S. § 10–482. The situation might be more persuasive if plaintiff had maintained in this state a warehouse or stock of goods for leasing purposes. However this is not the case.

The defendant-lessees rely heavily upon Walter E. Heller & Co. of California v. Stephens, 79 N.M. 74, 439 P.2d 723 (1968). In that case the New Mexico Supreme Court, in interpreting and applying Arizona's foreign corporation qualification statute, held void and unenforceable a leasing contract quite similar to the one here at issue. However, it is not necessary for us to determine whether or not the New Mexico court correctly applied Arizona law, as there is a very material difference in the fact situations involved. In Heller, evidence showed that the lessor-foreign corporation had actively engaged within the state of Arizona in the negotiations which resulted in the lease. In the case at hand, there were no such activities. In any event, we think the facts and the holding of the Tennessee court in Rochester Capital Leasing Corp. v. Schilling, Tenn., 448 S.W.2d 64 (1969) are more analogous and persuasive. On a fact situation practically identical to the facts here involved, except for the product leased, that court held that the foreign corporation was not doing business in Tennessee so as to require qualification as a foreign corporation.

In addition to the fact that plaintiff-foreign corporation was not doing business in Arizona, the record conclusively shows that the lease contract was entered into outside the state. Regardless of what the law might be in other jurisdictions, the Arizona Supreme Court has repeatedly held that the sanctions imposed by A.R.S. § 10–482 do not apply to activities of the foreign corporation outside this state. The particular act sought to be declared void must have occurred within this state. Neiderhiser v. Henry's Drive-In, Inc., 96 Ariz. 305, 394 P.2d 420 (1964); Bank of America, etc. v. Barnett, 87 Ariz. 96, 348 P.2d 296 (1960); Monaghan & Murphy Bank v. Davis, 27 Ariz. 532, 234 P. 818 (1925); Martin v. Bankers' Trust Co., 18 Ariz. 55, 156 P. 87 (1916). If the performance of a contract executed outside this state required activities within this state by the foreign corporation, and the foreign corporation failed to qualify before undertaking that performance, a substantial question might be presented. However, the performance of this lease did not require any action on plaintiff's part within the state at any time.

We hold that under the facts presented to the trial court by the motions for summary judgment, plaintiff was not transacting business within this state within the meaning of A.R.S. § 10–482, nor was the lease agreement entered into within this state.

Reversed and remanded for further proceedings consistent with this opinion.

EUBANK, P. J., and JACOBSON, J., concur.