**CONTINENTAL PROPERTIES, INC.**

v.

**The ULLMAN COMPANY et al.**

**Civ. A. No. 77–0109–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

May 13, 1977.

Charles F. Witthoefft, Richmond, Va., for plaintiff.

Richard L. Williams, R. Brian Ball, Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

This matter is before the Court on the individual defendants' motion of 21 March 1977 to dismiss the above matter pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that the complaint fails to state a claim against them upon which relief may be granted. They argue that plaintiff's efforts to establish a cause of action against them in this case by a statutory piercing of the corporate veil of defendant Ullman pursuant to Section 13.1–119 of the Code of Virginia should fail because defendant Ullman has not "transacted business"[1] within this State in a way which would subject the individual defendants to the provision of Va.Code § 13.1–119 (Repl.Vol.1973).[2]

Thus, the initial issue before the Court is the question of whether defendant Ullman, a foreign corporation, was transacting business in this Commonwealth so as to require it to procure a certificate of authority pursuant to Va.Code § 13.1–102 (Repl.Vol.1973)[3] so as to subject the individual defendants, its officers and directors, to the penalty of personal liability under Code Section 13.1–119 for its failure to procure such certificate.

The concept of "transacting business" has been a source of confusion to both courts

---

1. The terms "transacting business" and "doing business" are used interchangeably by Virginia courts to describe the same action. This Court will do the same. *See, e. g., Knights of the Ku Klux Klan v. Commonwealth,* 138 Va. 500, 122 S.E. 122 (1924).

2. Va.Code § 13.1–119 (Repl.Vol.1973) provides in pertinent part as follows:

   If a foreign corporation transacts business in this State without a certificate of authority, its directors, officers and agents doing such business shall be jointly and severally liable for any contracts made or to be performed in this State and any torts committed in this State between the time when it began to transact business in this State and the date when it obtains a certificate of authority.

3. Va.Code § 13.1–102 (Repl.Vol.1973) provides in pertinent part as follows: "No foreign corporation shall transact business in this State until it shall have procured a certificate of authority so to do from the Commission."

and corporations alike.[4] Because the facts are of extreme importance in a determination of transacting business, the facts of this case should be set forth *in extensio.* Under Rule 12(b)(6) the complaint, as supplemented, may be looked to for the undisputed facts.

Defendant Ullman is a New York corporation engaged in the business of the manufacture and sale of sundry household items. In 1975, allegedly due to various adverse economic factors affecting its business performance in New York, Ullman decided to close its manufacturing facility in Brooklyn and to construct a new facility in Suffolk, Virginia. In furtherance of this effort, Ullman took direct responsibility for a number of actions in 1975 and the first months of 1976. Among other acts Ullman entered into a purchase agreement with the Industrial Development Authority of the City of Suffolk regarding the building site on which the manufacturing plant was to be constructed; employed a Connecticut architectural firm to prepare plans and specifications for the construction of the plant; commenced regular negotiations and business dealings with a general construction firm located in Suffolk to construct the plant; and undertook various initial steps to obtain the necessary financing for the construction of the plant. Realizing that its project lacked coordination and direction, Ullman entered into an agreement on 23 July 1976 with plaintiff, a Virginia corporation engaged in the general business of real estate development and investment, in which the plaintiff's involvement with regard to the project was set out. Plaintiff subsequently performed all conditions and obligations on its part to be performed with regard to the agreements between plaintiff and defendant Ullman. However, due to fraudulent actions and omissions of defendant Ullman, Ullman was unable to secure financing and consequently aborted its planned move to Virginia. As a direct and consequential result of these acts and omissions by defendant Ullman plaintiff has suffered substantial damages.

Although Ullman transacted the above acts in Virginia as a foreign corporation during 1975 and 1976, it failed to procure a certificate of authority from the State Corporation Commission until on or about 18 November 1976. The various acts and omissions by and for which Ullman is allegedly responsible to plaintiff took place prior to that date. As a result of the foregoing, and pursuant to Section 13.1–119, the plaintiff seeks to hold the individual defendants, the officers and directors of defendant Ullman, jointly and severally liable.

In view of the great variety of possible fact situations it is difficult to formulate a precise, consistent definition of the term "transacting business" in the foreign qualification sense. Nevertheless, an analysis of what the Virginia courts have considered to be significant contacts narrows the possible interpretations of the phrase.

According to the Virginia Supreme Court:

> The term "doing business" has a legal significance which differs with the type of case to which it is applied. It is quite possible that a foreign corporation may be held to be "doing business" in a given State for one purpose, and not "doing business" for another. Three general classes of cases involving "doing business" are found in the reports, viz: (1) those involving service of process upon a foreign corporation; (2) those involving taxation; (3) those involving domestication or qualification under statutes regulatory of foreign corporations. Many of the cases of the second and third classes are primarily concerned with the nature and character of the business done, that is, whether the business is interstate, and hence beyond the power of the state to tax or regulate. In process cases that feature is not determinative. [citations omitted].

> The legal tests, for determining whether or not the foreign corporation is "doing business" in a state, differ as the case falls within one or the other of these

4. *See* Annot., 59 A.L.R.2d 1131 (1958).

classifications, and precedents dealing with one class are of little value in those instances when it is sought to apply them to another class. [*Tignor v. L. G. Balfour and Co.*, 167 Va. 58, 62, 187 S.E. 468, 470 (1936)].

As the issue confronting the Court falls within the third class enumerated above regarding domestication or qualification of a foreign corporation, this Court must seek the applicable test to apply only among precedents dealing with that class. Though there have been several decisions by the Supreme Court of Virginia in this area[5] no two cases deal with precisely the same fact situation.

█ Plaintiff argues that the proper test to apply is whether the foreign corporation has had such minimum contacts within Virginia that the maintenance of personal jurisdiction in this State over the foreign corporation "would not offend traditional notions of due process and fair play." The individual defendants correctly point out, however, that the test proposed by plaintiff applies to that class of cases involving service of process upon a foreign corporation.

It is generally held that a much stronger showing of in-State activities is required in order to invoke the sanctions of corporate qualification statutes than is required either to subject a foreign corporation to local taxation or to service of process. In considering this issue, the Court in *Rochester Capital Leasing Corp. v. Sprague*, 13 Ariz.App. 77, 474 P.2d 201 (1970), stated the following:

> It is apparent from an analysis of the decisions concerning the doing of business question that generally the courts require a much stronger showing of in-state activities in order to invoke the sanctions of

corporate qualification statutes than is required to subject the foreign corporation to local taxation or to state court jurisdiction through service of process.

With the foregoing in mind, we emphasize that the question before this Court is not whether the facts would have justified a finding that plaintiff-foreign corporation was doing or transacting business in Arizona sufficient to support in personam jurisdiction, or sufficient to uphold the validity of the imposition of a tax. Rather, as stated above, a much stronger showing of in-state contacts is required when the question before the court is whether or not a corporation's activities fall within the proscription of a corporate qualification statute. [474 P.2d at 203].

█ As previously noted, the corporate defendant was a New York corporation. It was engaged in the manufacture and sale of sundry household items made of vinyl and styrne. This suit has nothing to do with either manufacture or sale of such products within the Commonwealth of Virginia. Rather, plaintiff contends that defendant Ullman was "transacting business" within the statutory meaning of Sections 13.1–102, 13.1–119 as a result of its business dealings incidental to its attempt to move its manufacturing plant to Suffolk, Va. This may, indeed defendant Ullman concedes that it does, satisfy the broader service of process test as against the defendant foreign corporation. We are constrained to hold, however, that it falls short of satisfying the legal test requiring certification under Va.Code § 13.1–102.

Defendant Ullman was engaged in what some courts refer to as "acts preliminary to doing business."[6] Entering into a purchase agreement for the sale of land to be used as

---

**5.** *Rock-Ola Manufacturing Cor. v. Wertz*, 249 F.2d 813 (4th Cir. 1957); *Thaxton v. Commonwealth*, 211 Va. 38, 175 S.E.2d 264 (1970); *Western Gas Const. Co. v. Commonwealth*, 147 Va. 235, 136 S.E. 646 (1927); *Knights of the Ku Klux Klan v. Commonwealth*, 138 Va. 500, 122 S.E. 122 (1924); *Goldsberry v. Carter*, 100 Va. 438, 41 S.E. 858 (1902).

**6.** What constitutes "acts preliminary to doing business" was discussed by the Supreme Court

of Illinois in *Automotive Material Co. v. American Standard Metal Products Corp.*, 327 Ill. 367, 158 N.E. 698, 703 (1927):

> It is also established by the authorities of this country that a foreign corporation is not doing, transacting, carrying on, or engaging in business in a state, within the meaning of such statutes, by the doing of acts therein which are merely preliminary to the transaction of the business in which the corporation

a future manufacturing site does not constitute "transacting business" within the statutory meaning of §§ 13.1–102, 13.1–119.

Neither do the incidentals associated therewith such as negotiating with and entering into construction contracts with an architectural firm, a general construction firm, and a real estate development and investment firm such as plaintiff. Had defendant Ullman been in the business of developing manufacturing sites instead of the business of manufacturing household items a different result might be reached.

■ Although there is not an abundance of Virginia decisions [7] in this area to lend guidance to the Court, the few holdings that are available tend to support the proposition that transacting business in the State by a foreign corporation pursuant to §§ 13.1–102, 13.1–119 imports the transaction of its ordinary and customary business herein. Conversely, business transactions of such corporation within the state which are not a part of its ordinary business but instead are merely incidental thereto, are insufficient to constitute "transacting business" pursuant to Sections 13.1–102, 13.1–119.

The Court of Appeals for the Ninth Circuit was faced with an issue similar to ours in *Worcester Felt Pad Corp. v. Tucson Airport*, 233 F.2d 44 (9th Cir. 1956), in which it held that the act by a foreign corporation of leasing real property upon which to construct a plant for the purpose of manufacturing household items, an act which was incidental and preliminary to the business in which the corporation was ordinarily engaged or was about to engage, did not constitute transacting business within Arizona's domestication statute.[8] That statute is similar to the Virginia statute in question here. The court went on to state that "[a] distinction can be drawn between an act preparatory to entering business and an act of carrying on or pursuing business. If a foreign corporation planning to do business within the State had to forestall the execution of a favorable preliminary contract for the acquisition of a lease or fee title to ground, it might very well lose the thing which had motivated its desire to do business within the state." 233 F.2d at 49.

In *FCA Properties v. Hudson Oil Co. of United States, Inc.*, 35 Mich.App. 79, 192 N.W.2d 390 (1971), the Michigan Appellate Court held that Hudson Oil Company, a foreign corporation, was not in fact transacting business within the meaning of Michigan's domestication statute as a result of having leased real property within the State with the intent of constructing a gasoline station thereon. In its holding, the court declared:

The record in this case would not support a finding that at the time the lease was entered into Hudson Oil was carrying on its business in this State. Hudson Oil's business was the operation of gasoline service stations, not the acquisition or ownership of, or trading in, real estate leases. The rule appears to be well established that the execution by a foreign corporation, as tenant, of a lease of real

is to engage, such as offering bids in the state on work to be performed therein, entering into a contract to perform such work, or by giving a bond to secure performance of such contract. It is pointed out in those decisions that entering into a contract similar to the one now under consideration is undoubtedly "transacting business" within the unlimited meaning of that term, but that such is not the sense in which the term is used in the statutes, and that it means carrying on work or transacting the business for which the corporation was organized or in which it is to engage, and that it means performing the work or business called for by the contract. If such is not the true interpretation of the statute, foreign corporations in many instances would be compelled to incur the expense of becoming licensed to do business in another state without any assurance whatever that they could contract to do such business or do such business after being licensed to do the same. Ofttimes a foreign corporation may have occasion to bid for a job in its line of business that would mean to it contemplated profits, but if it had to be licensed before it could bid on such a contract, or contract to do such work, the opportunity to do the same would be gone. To hold that it had to be licensed before it contracted for or secured business to be done would be unreasonable.

7. See note 5, *supra*.

8. Ariz.Code Ann. § 53–801 (1939).

property does not constitute doing business or carrying on business within the State where the property is located, at least where the act of entering into the lease is merely incidental and preliminary to the business in which the corporation is engaged or is about to engage. [192 N.W.2d at 393].

As previously noted, corporate defendant Ullman does not dispute that its contacts within the Commonwealth of Virginia were such as to satisfy the test for transacting business pursuant to the jurisdictional requirements of Section 8–81.2[9] of the Code of Virginia. But since the business transacted in Virginia was not the usual and customary business of the corporate defendant, but was instead merely preliminary thereto, there was no requirement that the Ullman Corporation register as a foreign corporation doing business in Virginia under Va.Code § 13.1–102. Such registration not being required it follows that there is no personal liability as against the corporate officers and directors under the provision of Va.Code § 13.1–119 for a failure so to do.

An appropriate order shall issue.

---

**9.** Va.Code § 8–81.2 (Cum.Supp.1976), the Va. "Long Arm" statute provides in pertinent part as follows:

    (a) A court may exercise personal jurisdiction over a person who acts directly or by an

agent, as to a cause of action arising from the person's (1) Transacting any business in this State . . . . .