865 F.2d 255
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
COLEMAN ADAMS CONSTRUCTION, INC.; Key Industries, Inc.,
Plaintiffs-Appellants,
v.
Robert C. GOBER; Jeanne C. Gober, Defendant-Appellee.
 No. 88-3547.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 2, 1988.
Decided: Dec. 5, 1988.
 
 Sidney H. Kirstein (McRorie, Kirstein & Gay, on brief), for appellants.
 Richard Irving Shope (Shope, McNeil & Maddox, on brief), for appellees.
 Before DONALD RUSSELL and K.K. HALL, Circuit Judges, and DENNIS R. KNAPP, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Coleman-Adams Construction Company, Inc. ("Coleman") and Key Industries, Inc. ("Key") appeal an order of the district court affirming the bankruptcy court's denial of their claims asserted in the Chapter XIII bankruptcy of Robert and Jean Gober. Coleman and Key alleged that the Gobers, residents of North Carolina, were personally liable for obligations assumed in Virginia by Panavista Enterprises, Inc. ("Panavista"), a North Carolina corporation wholly owned by the Gobers. Both the bankruptcy court and the district court concluded that there was no basis on which Coleman and Key could pierce Panavista's corporate veil. We find no error in that conclusion.
 
 
 2
 Panavista was organized in 1982 by the Gobers to operate a restaurant in Greensboro, North Carolina. In 1985, the corporation embarked on an effort to establish a second restaurant in Lynchburg, Virginia. The Lynchburg enterprise was headed by the Gobers' son, Rodger Scott Gober, who leased a building in the corporate name in July of 1985. The younger Scott subsequently contracted in the name of Panavista for renovation of the leased facility with Coleman and for the installation of certain equipment with Key. The contracts with both Coleman and Key were signed in August and September of 1985, respectively. Not until November 4, 1985, however, did Panavista obtain a certificate of authority to do business in Virginia as a foreign corporation pursuant to Va.Code Ann. Sec. 13.1-102.
 
 
 3
 In June of 1986, Panavista defaulted on the lease of the Lynchburg property while still carrying an outstanding balance due on the Coleman and Key contracts. The Gobers subsequently filed a personal voluntary bankruptcy petition in North Carolina. Coleman and Key filed claims in the North Carolina proceedings alleging that the Gobers were individually liable under Virginia Code Ann. Sec. 13.1-119 for obligations assumed by Panavista while transacting business without a Virginia Certificate of Authority.[1] The Gobers objected to the claims maintaining that Panavista had not "transacted business" in Virginia within the meaning of the statute prior to November 4, 1985.
 
 
 4
 The disputed claims were tried in bankruptcy court in September of 1986. After a two-day hearing, the bankruptcy court concluded that Panavista had not engaged in its "usual and customary business" in Virginia prior to obtaining a Certificate of Authority and, thus, had not transacted business in violation of section 13.1-119. Accordingly, the claims of Coleman and Key were denied.
 
 
 5
 Coleman and Key timely appealed the bankruptcy court's determination to the district court. The district court, however, affirmed the denial of claims reasoning that Panavista's actions prior to November 4, 1985, were merely "preliminary to doing business" and not "within the ambit" of section 13.1-119. The appeal to this Court followed.
 
 
 6
 On appeal, Coleman and Key contend that under a totality of the circumstances analysis, Panavista's extensive activity prior to November 4, 1985, must be construed as "transacting business." Appellants direct our attention to actions such as the opening of a business office and bank accounts, the obtaining of insurance, and the conducting of advertising all of which occurred before the Certificate of Authority was obtained. Appellants also argue that undertaking actions specifically authorized in Panavista's corporate charter including the leasing and renovation of real property must be considered as transacting the business of the corporation. We are unpersuaded by appellant's argument.
 
 
 7
 In a sound and well reasoned opinion, the district court recognized that under Virginia law, a corporation "transacts business" in violation of the corporate qualification statutes only when it engages in its "usual and customary business."[2] In this instance the "customary" business of Panavista was the operation of a restaurant. It is undisputed that the Lynchburg restaurant did not open until after November 4, 1985. We, therefore, agree with the district court that any Panavista activity prior to that date was "incidental" and "preliminary" to the usual business of the corporation. Accordingly, the order affirming the bankruptcy court's denial of appellants' claims is affirmed for the reasons expressed therein by the district court. Coleman-Adams Construction, Inc. and Key Industries, Inc. v. Robert C. Gober and Jeanne C. Gober, No. C-87-848-G (M.D.N.C. April 11, 1988).
 
 
 8
 AFFIRMED.
 
 
 
 [1]
 In 1985, Va.Code Ann. Sec. 13.1-119 provided in pertinent part that:
 If a foreign corporation transacts business in the State without a Certificate of Authority its directors, officers and agents doing such business shall be jointly and severally liable for any contracts made or to be performed in the State ... between the time when it began to transact business in the State and the date when it obtained a Certificate of Authority.
 This statutory provision was repealed by the Virginia legislature effective January 1, 1986.
 
 
 [2]
 The district court's reasoning was well grounded on appropriate authority, including Continental Properties, Inc. v. Ullman Co., 436 F.Supp. 538 (E.D.Va.1977) and Tignor v. L.G. Balfour & Co., 167 Va. 58, 182 S.E. 468 (1936)